# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DAROUSH EBRAHIME, | )<br>) |
| Plaintiff, | ) No. 09 C 7825<br>) |
| v. | ) Magistrate Judge<br>) Jeffrey Cole |
| THOMAS DART, Sheriff of Cook County,<br>COOK COUNTY, *et al.*, | )<br>) |
| Defendants. | )<br>) |

## MEMORANDUM OPINION AND ORDER

The plaintiff is a pre-trial detainee at Cook County Jail, and has been since February 2007. His amended complaint, brought under 42 U.S.C. §1983, charges the Sheriff of Cook County, Cook County, and several individual defendants with various civil rights violations stemming from his being attacked by a fellow detainee on October 20, 2009. In Counts I, II, and III, the plaintiff seeks to hold the Sheriff and the County liable under *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658 (1978). Counts IV through VIII are brought against the individual defendants. Count IX alleges state law claims against the Sheriff and the County, as well as the individual defendants. Count X is a claim for indemnification against the individual defendants and the County, and Count XI asks for injunctive relief against all defendants. The Sheriff and the County ask that (1) Counts I, II, and III against them be dismissed; (2) the County be dismissed from all claims; and (3) the claims for punitive damages against the Sheriff and the County be dismissed.

# I.

# PLAINTIFF'S ALLEGATIONS

On October 20, 2009, the plaintiff was sitting at a table on tier 2B of Division Ten at Cook County Jail, when he was attacked by a fellow detainee. Plaintiff's attacker was being escorted, without handcuffs, by two officers. Without provocation, the detainee threatened to kill plaintiff, and struck him on the face, head, and upper body at least ten times with his fist. The attack forced the plaintiff to the ground, and two officers, one of whom plaintiff knows as "Officer Zriny," responded and stopped the assault. Shortly thereafter, approximately ten more officers arrived on tier 2B to intervene. Plaintiff claims, upon information and belief, that the officers on duty were aware that the unrestrained detainee was likely to attack him in retaliation for his reporting that the detainee had stolen personal property from other inmates. Plaintiff charges that these unknown officers failed to take adequate precautions to prevent this attack.

By the time the guards responded to the attack, plaintiff had sustained injuries to his head, spine, and back. He was in so much pain that he could not walk, and officers assisted him up off the ground and helped him into a wheelchair. Then, plaintiff began to experience chest pains. He was taken to see a nurse, whom plaintiff knows as "Nurse Jacky." The nurse checked his vital signs, but then instructed an officer, whom plaintiff identifies as "Captain Rosario," to return plaintiff to his tier without further medical treatment. The plaintiff complained to Nurse Jacky, Captain Rosario, and another officer escorting him back to the tier – "Sergeant Helms" – that he was in excruciating pain and unable to walk. But, plaintiff says that these officers, and another officer whom he knows as "Officer Ramos," responded by forcefully and intentionally dumping him out of his wheelchair

2

and into the frame of a door, which caused plaintiff to sustain additional injuries to his neck, back, foot, and hand, and exacerbated the injuries he had received during the attack.

After being dumped from his wheelchair, plaintiff was helpless on the ground. Rather than assisting him, two of the officers dragged plaintiff downstairs to the first floor bullpen, causing injuries to his side and hip. The officers then left plaintiff on the floor of the bullpen where he remained for approximately four hours. During that time, certain defendants, including Captain Rosario and Sergeant Harrison, demanded that plaintiff sign a document against his will. Although he could not read the document – he says he is unable to read or write English – plaintiff was informed that the document was a plea bargain, and further informed that if he did not sign the document he would be left on the floor of the bullpen and denied medical treatment. Plaintiff refused to sign the document.

At approximately 9:30 on the evening of October 20, plaintiff was finally taken in a wheelchair by Sergeant Harrison to Cermak Health Services of Cook County, which is about two blocks south of the Jail. While he was there, the medical staff prescribed him medication and performed a CAT scan of his head and an x-ray of his back and hand. Plaintiff characterizes the treatment provided as inappropriate, and that he continued to suffer serious pain. On the morning of October 21, 2009, plaintiff was discharged from Cermak Health Services and returned to his cell. There, he remained in pain and his injuries worsened. Plaintiff claims that he has yet to receive appropriate treatment for the injuries he sustained on October 20, 2010, and continues to suffer severe and debilitating pain in his back, ribs, hip, head, neck, hands and feet. He claims his back injuries are permanent and, in addition, he has suffered emotional distress, mental anguish, and insomnia.

Plaintiff, who is 58, adds that he has a list of other ailments that require medical treatment: chest pain, coronary artery disease, hypertension, anemia, hypercholesterolemia, insomnia, back pain, GERD (gastroesophageal reflux disease), and arthritis. His physicians, including those employed by Cook County, have prescribed: walking shoes, a cane, a "medical chair", prescription glasses, medications, and physical therapy. Plaintiff claims that these items have been repeatedly and unjustifiably withheld from him entirely, or not given to him in a reasonably timely manner.

Finally, plaintiff alleges that "[t]he Constitutional violations detailed above were caused in part by the customs, policies, and practices of the [Sheriff and County], as promulgated, enforced, and disseminated by [the Sheriff], whereby the [Sheriff and County] . . . failed to provide access to proper health care in this and many other documented cases . . . were deliberately indifferent to the substantial risk of inmate against inmate attacks in this and many other documented cases . . . [and] failed to ensure that excessive force was not used against pre-trial detainees in this and many other documented cases. (*Amended Complaint*, ¶¶ 39, 41, 43).

## II.

## ANALYSIS

The Sheriff and the County first argue that plaintiff's *Monell* allegations are inadequate under *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal,* 556 U.S. –, 129 S.Ct. 1937 (2009). Second, they point out that the Sheriff and his employees have no employment relationship with the County, and ask that the complaint against the County be dismissed in its entirety. And lastly, they ask that all claims for punitive damages against the Sheriff and the County be dismissed because, as municipalities, they are immune from such claims.

## A.

**Plaintiff's *Monell* Claims Fail to Pass Muster under *Twombly* and *Iqbal***

In the wake of *Twombly* and *Iqbal*, it is clear that a plaintiff "must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010). In *Twombly,* the Court laid to rest the "no set of facts language" that it said "puzzl[ed] the profession for 50 years" after *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). *Twombly,* 550 U.S. at 563. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 129 S.Ct. at 1949. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. Allegations that amount to nothing more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint consisting of nothing more than "'naked assertion[s]' devoid of 'further factual enhancement,'" must be dismissed for failing to meet the requirements of Rule 8. *Iqbal,* 129 S.Ct. at 1949. Allegations of facts "that are 'merely consistent with' a defendant's liability, . . . 'stop[] short of the line between possibility and plausibility of 'entitlement to relief.' " *Iqbal,* 129 S.Ct. at 1949. These are the very types of allegations the plaintiff sets out in Counts I through III of his amended complaint.

The amended complaint goes into some detail while relating the events surrounding the attack on plaintiff and the response of the guards, the nurse on duty, and medical staff at Cermak Health Services. But once the allegations regarding Officers Zriny and Ramos, Sergeants Helms and Harrison, Captain Rosario, and Nurse Jacky end and the allegations regarding the Sheriff and County

begin, that detail vanishes. All the amended complaint has to say about the Sheriff and the County is a thrice-repeated, talismanic mantra: "[t]he Constitutional violations detailed above were caused in part by the customs, policies, and practices of the [Sheriff and County], as promulgated, enforced, and disseminated by [the Sheriff] . . . ." (*Amended Complaint*, ¶¶ 39, 41, 43).

In *Iqbal*, the Court assessed a *Monell* claim against the Attorney General of the United States and the Director of the FBI. The Court began by listing the allegations that were "not entitled to an assumption of truth":

> Respondent pleads that petitioners "knew of, condoned, and willfully and maliciously agreed to subject [him]" to harsh conditions of confinement "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest." The complaint alleges that [the Attorney General] was the "principal architect" of this invidious policy, and that [the FBI Director] was "instrumental" in adopting and executing it.

129 S.Ct. at 1951. The Court found such allegations inadequate, characterizing them as "conclusory" and "nothing more than a 'formulaic recitation of the elements' of a constitutional... claim . . . ." *Id.* Here, the plaintiff's allegations are no better and, perhaps, not even as informative as those found wanting in *Iqbal*. Moreover, in *Iqbal*, the complaint even added several factual allegations referring to the defendants' approval and direction of a number of more specific acts, although the Court determined those to be more plausibly explained by national security concerns than by invidious discrimination. The complaint in this case does not add any such factual allegations regarding the Sheriff or the County.

The plaintiff's amended complaint fails to state *Monell* claims against the Sheriff and the County under *Twombly* and *Iqbal*. Those claims must therefore be dismissed, but they will be dismissed without prejudice as their defects are, possibly, curable. In light of that, one further point

about these allegations bears mentioning. The amended complaint charges that the constitutional violations visited upon the plaintiff "were caused in part" by the practices and policies of the Sheriff and the County. Conclusory allegations are not even an adequate formulaic recitation of the elements of a *Monell* claim, and "causation in part" is inadequate for *Monell* liability.

In *Monell*, the Court premised municipal liability on an official policy that was "the moving force of the constitutional violation . . . ." 436 U.S. at 694-95. *See also City of Canton, Ohio v. Harris,* 489 U.S. 378, 389 (1989)(". . . a municipality can be liable under § 1983 only where its policies are the moving force [behind] the constitutional violation."). Since then, the Seventh Circuit has repeatedly required that the complained-of policy be *the* moving force behind the constitutional deprivation, as opposed to *a* moving force. *See Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 306 (7th Cir. 2010); *Valentino v. Village of South Chicago Heights*, 575 F.3d 664, 674-75 (7th Cir. 2009); *Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007); *Campbell v. Miller*, 499 F.3d 711, 719-20 (7th Cir. 2007); *White v. City of Markham*, 310 F.3d 989, 998 (7th Cir. 2002); *Estate of Novak ex rel. Turban v. County of Wood*, 226 F.3d 525, 530-31 (7th Cir. 2000).

Under this requirement, an allegation that a constitutional violation was "caused in part" by a policy or practice would clearly be insufficient. As the court stated in *Sims*, "[i]t order to state a § 1983 claim against a municipality, the complaint must allege that an official policy or custom *not only caused* the constitutional violation, but was 'the moving force' behind it." 506 F.3d at 514 (emphasis supplied). And in *Thompson*, the court noted that a distinction could be made between "acts that caused the injury and those that were merely contributing factors," although it found such a distinction unnecessary to its ruling. Thus, even if *Conley v. Gibson* were still in force, the

7

conclusory allegations of the plaintiff's amended complaint would be insufficient to state a *Monell* claim.

**B.**

**The County is Not a Proper Defendant in Counts II and III**

Because the dismissal is without prejudice, it is also worthwhile to address the remaining arguments the Sheriff and County raise. In Counts I through III, the plaintiff hopes to hold Cook County liable for what happened to him while he was in custody at Cook County Jail under *Monell*. In that case, the Supreme Court held that a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue; there is no *respondeat superior* liability. 436 U.S. at 694-95. There must be a "direct causal link between a municipal policy or custom, and the alleged constitutional deprivation." *City of Canton v. Harris,* 489 U.S. 378, 385 (1989). The question here is whether there is such a link between Cook County and the Sheriff of Cook County. It may seem counterintuitive, but there isn't – at least not enough of one to allow plaintiff's *Monell* claim against the county to stand.

The Cook County Jail and the Cook County Department of Corrections are solely under the supervision and control of the Sheriff of Cook County. *Thompson v. Duke*, 882 F.2d 1180, 1187 (7th Cir. 1989). Under Illinois law, "Illinois sheriffs are independently elected officials not subject to the control of the county." *Ryan v. County of DuPage,* 45 F.3d 1090, 1092 (7th Cir.1995). *See also Franklin v. Aruba*, 150 F.3d 682, 685 (7th Cir.1998); *Moy v. County of Cook,* 159 Ill.2d 519, 532, 640 N.E.2d 926, 931 (1994). In *Moy*, the Illinois Supreme Court explained at length the relationship (or lack thereof) between the county and the sheriff:

> The county is given no authority to control the office of the sheriff. Significantly, county boards may exercise only such powers as are expressly granted by the State or arise by implication from these granted powers or are indispensable to the purpose of their existence. Although a county board may alter or impose additional duties upon county officers, the board may not alter the duties, powers and functions of county officers that are specifically imposed by law.
>
> * * *
>
> The sheriff of each county shall be the warden of the jail of the county, and have custody of all prisoners in the jail, except when otherwise provided in the "County Department of Corrections Act" (Ill.Rev.Stat.1989, ch. 75, par. 102). The sheriff may appoint a superintendent of the jail, and remove him at his pleasure, and it is the sheriff who is responsible the superintendent's conduct and training. Further, the sheriff is responsible for hiring and training all personnel necessary to operate and maintain the jail. (Ill.Rev.Stat.1989, ch. 75, par. 103.) Pursuant to the Counties Code, a department of corrections is created within the office of the sheriff's department. (Ill.Rev.Stat.1991, ch. 34, par. 3-15002.) Under the direction of the sheriff, the department operates and has jurisdiction over the county jail and other penal institutions and, *inter alia,* establishes diagnostic, classification and rehabilitation programs at the county jail. Ill.Rev.Stat.1991, ch. 34, par. 3-15003.

159 Ill.2d at 526-27, 640 N.E.2d at 929 (case citations omitted). *See also Carver v. Sheriff of La Salle County*, 203 Ill.2d 497, 513-14, 787 N.E.2d 127, 136-37 (2003).

In *Thompson*, the Seventh Circuit affirmed the dismissal of Cook County as a defendant against a *Monell* claim, holding that the County had no authority to policies at the Cook County Jail. 882 F.2d at 1187. The Seventh Circuit affirmed a similar dismissal in *Ryan*, although that case had to do with the sheriff being in charge of the county courthouse. 45 F.3d at 1092. Likewise, here, the *Monell* claims against Cook County under Counts II and III must be dismissed, whether or not the plaintiff is able to cure those counts' *Iqbal* deficiencies because it is the Sheriff who is the policymaker at the county jail. The County remains in the case, however, as a necessary party because the plaintiff's suit seeks damages against the sheriff. *See Carver v. Sheriff of LaSalle County,* 324 F.3d 947, 948 (7th Cir. 2009)("a county in Illinois is a necessary party in any suit seeking

damages from an independently elected county officer ... [and] [b]ecause state law requires the county to pay, federal law deems it an indispensable party to the litigation.").

The County could not be dismissed from a cured Count I, however, because that is an inadequate medical care claim. It is the County, rather than the Sheriff, that oversees and controls Cermak Health Services, which bears the brunt of plaintiff's allegations of inadequate medical care. *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 305 n.4 (7th Cir. 2010). Accordingly, the County would remain as a defendant in Count I in any event.

## C.

### Punitive Damages are Unavailable Against the Sheriff and the County

The final issue is the plaintiff's claims for punitive damages against the Sheriff and the County. Municipalities are, of course, immune from punitive damages under § 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). *Newport*, which plaintiff's response brief acknowledges, is a thirty-year-old case. It is thus surprising that a claim for punitive damages should have been advanced against the County. Ultimately, the response brief bows the inevitable and, in effect, concedes the improvident nature of the claim.

The plaintiff continues to argue that the Sheriff is liable for punitive damages. The Sheriff, however, is a municipality here as well, because he has been sued in his official capacity. (*Amended Complaint*, ¶ 6). *See Minix v. Canarecci*, 597 F.3d 824, 830 (7th Cir. 2010).[1] The cases on which the plaintiff has relied do not support the punitive damage argument. First, there is the portion of a

---

[1] "This official-capacity claim against the Sheriff is considered one against a municipality, and municipalities are immune from punitive damages in § 1983 suits. [Citations omitted]. ('[P]unitive damages [may] be recovered against a government actor only in an individual capacity suit.')." *Minix*, 597 F.3d at 830.

quotation from the midst of a discussion in *Newport*, in which the court of appeals said that "[by allowing juries and courts to assess punitive damages in appropriate circumstances against the offending official, based on his personal financial resources, the statute directly advances the public's interest in preventing repeated constitutional deprivations." 453 U.S. at 269. Overlooked is the reference to the official's *personal financial resources*, which of course, makes clear that the Court was talking about suits against officials *in their individual capacity*. Also cited is *Wade v. Smith*, 461 U.S. 30 (1983), an individual capacity suit that did not involve a *Monell* claim, and *Stachniak v. Hayes*, 989 F.2d 914 (7th Cir. 1993), another individual capacity suit where the *Monell* claim against the municipality was disposed of by directed verdict. *Id.* at 925-28. Indeed, there does not even appear to have been a punitive damage claim against the municipality in that case. Therefore, the claims for punitive damages against the County and the Sheriff are dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss [#29] is GRANTED in part, and DENIED in part.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 11/30/10